# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In Re: Brent A. Blanchard )<br>Attorney at Law, Bar No. 7605 )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>_____ ) | Case No.: 2:16-cv-01079-GMN<br><br>**ORDER** |

Presently before the Court is Brent A. Blanchard's ("Blanchard's") Response to his Order to Show Cause, (ECF No. 5), regarding reciprocal discipline in this Court. The Nevada Supreme Court issued a three-year suspension on December 23, 2015, and the Court issued its Order to Show Cause on April 7, 2016, (ECF No. 1). Based on Blanchard being unable to prove that his discipline is improper by clear and convincing evidence, reciprocal discipline is appropriate.

## I.     BACKGROUND

The Supreme Court of Nevada approved a Conditional Guilty Plea Agreement signed by Brent Blanchard, bar number 7605, and issued his suspension from the practice of law for three years. (Order of Suspension, Ex. 1 to OSC at 1–2, ECF No. 1). Blanchard's suspension originally arose from failing to complete his Continuing Legal Education ("CLE") hours; he was suspended on July 27, 2010 for that infraction. (Conditional Plea Agreement ("CPG") 2:7–8). However, in the instant suspension, Blanchard admitted in the CPG to two specific counts: count 1 concerning James Rhodes and count II concerning James Boyle and Judge Joanna Kishner. (*Id.* 2:6–6:18).

///

///

***Count I: James Rhodes***

James Rhodes ("Rhodes") was a long-time friend and former coworker of Blanchard who sought Blanchard out for assistance with his mortgage, which was soon to be foreclosed. (CPG 2:9–12). Rhodes originally sought out Blanchard for help with a loan modification on the property, but after some correspondence and the lender offering a modification Rhodes rejected, Blanchard "considered the matter closed." (*Id.* 2:12–15).

In the fall of 2010—after Blanchard had been suspended for failing to complete his CLEs—Rhodes reached out to Blanchard for assistance and offered to use money from "a revocable trust created for the benefit of Rhodes' mother, and his now deceased father, to purchase a house for Rhodes to rent." (*Id.* 2:16–18). Rhodes was designated as trustee and therefore had the ability to move money around and make withdrawals. (*Id.* 2:18–20).

Subsequently, Rhodes withdrew $70,000 from the trust—without his mother's knowledge or permission—to purchase a house. (*Id.* 2:21–22). Blanchard did not know at the time that Rhodes's mother, Helen ("Rhodes's mother" or "Helen Rhodes"), did not approve the transfer, and created a Limited Liability Company ("LLC") called Southwest Asset Management ("SAM") LLC, where Blanchard was the listed agent and only officer. (*Id.* 2:23–25). Rhodes transferred the money to SAM for the purchase. (*Id.* 2:22–23).

SAM used the transfer to purchase a house for Rhodes in Las Vegas. (*Id.* 3:8–9). Blanchard intended that the deed of trust secured by the house purchased be recorded in Rhodes's mother's name because she was the source of the funds. (*Id.* 3:9–12). However, this was never completed and Blanchard remained in full control of the assets. (*Id.* 3:12–13).

Blanchard also believed that Rhodes would pay rent on the house that would apply to the repayments of the Rhodes family trust. (*Id.* 3:14–15). However, Rhodes failed to make any payments, and Blanchard filed an action in Clark County Justice Court to have Rhodes evicted. (*Id.* 3:16–17). Rhodes counter-sued and transferred the case to the Eighth Judicial District

Court, where he alleges that Blanchard is trying to evict him so Blanchard can sell the house for profit. (*Id.* 3:18–24). However, that matter was dismissed because SAM has no licensed attorney representing it. (*Id.* 3:24–25).

Moreover, Blanchard's LLC, SAM, held title to the house at least up to the date of the State Bar Hearing ("the Hearing"). (*See* R. on Appeal, Vol. II, 45:8–19). Blanchard argues that he has a "never-ending desire to resolve the Rhodes dispute to [Rhodes's mother's] significant financial benefit." (Resp., ECF No. 5, 35:4–5). However, at the Hearing, it became clear that Blanchard negotiated with Rhodes's mother in order for him to still make a personal profit off of the house. (*See* R. on Appeal, Vol. II, 74:11–18).[1] The fact that Blanchard felt entitled to make a profit off of the house infuriated the Hearing Panel ("the Panel"). (*See* R. on Appeal, Vol. II, 74:19–25).[2]

Accordingly, under count I, Blanchard pled to violating: (1) Rule of Professional Conduct (RPC) 1.4(a)(5) (Communication) for failing to inform Rhodes about Blanchard's inability to practice law because his license was suspended; (2) RPC 1.8(a) (Conflict of Interest: Current Clients) for suing Rhodes, Blanchard's client, to gain total control of SAM and its assets and preparing the documents establishing SAM; (3) RPC 1.15 (Safekeeping Property) for transferring the $70,000 taken from the Rhodes family trust and putting it into SAM without following through with the deed of trust safeguard to ensure that the Rhodes family trust was acknowledged as the source of the funds and as such had an interest in the home; (4) RPC 1.16

---

[1] [Panel]: "The actual proposal was that you [Blanchard] were going to sell the house, you were going to give her back the 70[k], you were going to give the trust back 15[k] and you were going to keep 15[k] for yourself, is that not true?"
[Blanchard]: "That was one of the proposals and I proposed that because it would give her more money than she would have gotten under the loan."

[2] [Panel]: "You're not doing this to be generous to her. I mean, do you not see that the right thing is to give her the house back that you have no—you've done nothing to earn this house. You have no—this is so clear to everybody in the world looking at this that you are not the one who should be owning this house."

(Declining or Terminating Representation) because he represented Rhodes despite being suspended; and (5) RPC 5.5 (Unauthorized Practice of Law) for serving as Rhodes's lawyer while being suspended from the practice of law. (CPG 4:1–13).

Blanchard contests this count, arguing that he believes he and Rhodes merely had friendly conversations concerning potential business ventures that did not constitute legal advice. Specifically, before Blanchard created the LLC, he stated he "was still interested in doing business in real estate and [he and Rhodes] began discussions of a new Nevada [LLC] which could always manage its own properties without regulatory obstacles." (Resp. ¶ 66). Once the two decided to form the LLC, Blanchard argues that he "believed that this was purely a business deal and involved no legal work on behalf of Rhodes or [Rhodes's] mother. He created the LLC for himself and not for Rhodes or [Rhodes's mother]." (*Id.* ¶ 71).

Further, Blanchard asserts that because Rhodes and Rhodes's mother were never his clients, "[t]here were no client funds to protect." (*Id.* 30:26–27). Blanchard disputes his plea agreement, stating "[i]f the practice of law included telling anyone what usually happens in short sale situations, then every licensed real estate agent in the nation is guilty of unlicensed practice of law every time they tell a short-sale seller how the process usually works." (*Id.* 31:15–17). Additionally, he argues "every utterance of any attorney about what the law is, or how a proposal could be viewed as carrying potential legal liability would turn the listener into a client for all purposes, even while declining representation." (*Id.* 31:18–20).

### *Count II: James Boyle and Judge Joanna Kishner*

In July 2014, James Boyle, Esq. ("Boyle") contacted the bar about a case he was working on where Blanchard was opposing counsel, although Blanchard was suspended from his CLE deficiency. (CPG 4:16–21). Boyle filed a Motion for Clarification on Status of Counsel for Defendants before District Judge Joanna S. Kishner ("Judge Kishner") in an

attempt to address the fact that Blanchard had been suspended since 2010. (*Id.* 5:4–9). Judge Kishner scheduled a hearing on the motion and Blanchard failed to appear. (*Id.* 5:10–12).

Blanchard blamed his failure to appear on "a lack of reliable mail service for both not informing him that he was CLE suspended and not informing him of the date of the original motion." (*Id.* 5:18–22). Additionally, Blanchard stated that the reason for his suspension was personal setbacks including "referring a family friend to a Utah attorney who swindled the family friend," and for his ongoing depression. (*Id.* 5:23–6:3).

Accordingly, under count II, Blanchard pled to violating: (1) Rule of Professional Conduct (RPC) 1.4(a)(5) (Communication) for failing to inform his clients about Blanchard's inability to practice law because his license was suspended; (2) RPC 1.16 (Declining or Terminating Representation) because he accepted the representation on this matter despite being suspended; (3) RPC 3.3 (Candor Toward the Tribunal) for insisting that he was unaware of his suspension and for filing documents in court while suspended; (4) RPC 3.4 (Fairness to Opposing Party and Counsel) for filing documents related to this case while knowingly being suspended from the practice of law; (5) RPC 5.5 (Unauthorized Practice of Law) for engaging in the representation of his clients and filing paperwork on their behalf despite being suspended; and (6) RPC 8.1(b) (Bar Admission and Disciplinary Matters) for failing to respond to these allegations during the Bar investigation into this matter. (*Id.* 6:6–18).

Blanchard does not oppose his violations under count II in his Response to this Court's OSC. He does acknowledge that "[a] hearing regarding Blanchard's representation of a client in another case during the suspension was scheduled on the day of his anniversary." (Resp. ¶ 212). He asserts, "[n]ot knowing if he would even be alive in another week or month, Blanchard foolishly refused to attend partially because of his growing contempt for attorneys trying to win with technicalities rather than the merits of their cases." (*Id.*).

In regards to the suspension in general, Blanchard does contend, however, that he was "subjected to a hostile disciplinary panel" and that he "consented to a factually incorrect conditional plea agreement." (Resp. ¶ 1). He attributes most of his legal deficiencies to his depression; for example, he asserts he "did not even open most if not all mail from the Nevada State Bar" due to his depression becoming worse. (*Id.* ¶ 15); (*see, e.g.*, *id.* ¶ 42 ("Blanchard's depression at this time worsened and manifested itself in avoiding being reminded of failures to follow some tasks to completion.")).

Additionally, Blanchard blames the mail service for him being unaware that he could not practice law, as "[t]he administrative CLE suspension led to Blanchard no longer being mailed annual Bar dues renewal notices and notices of CLE reporting requirements." (*Id.* ¶ 101). Accordingly, Blanchard alleges that he should not receive reciprocal discipline because Rhodes was not a client to whom Blanchard owed duties, (*see id.* at 31:7–8), and because the Bar proceeding lacked due process and "[f]launted [j]ustice" by silencing Blanchard and forcing disproportionate discipline on him, (*see id.* 32:23–24).

### *Procedural History*

The State Bar filed Blanchard's Formal Complaint on January 26, 2015. (Hr'g Packet 2015-06-16, pg. 1). Blanchard received a formal hearing ("the Hearing") in front of the Board on July 17, 2015. (R. on Appeal, Vol. II, pg. 8). The State Bar recommended suspending Blanchard for only a year, (*see id.* 20:3–7), however, the Hearing Panel ("the Panel") issued a suspension of three years, (*see id.* 81:20–25). The Panel rendered the heightened suspension because it became increasingly frustrated with Blanchard's "refusal to acknowledge [the] wrongful nature of [his] conduct" in that he "has stated that he believed he was the victim in this matter," when the Panel believes Rhodes's mother as the only victim. (*Id.* 81:3–6 ("[In regards to the] [v]ulnerability of a victim we find that Helen Rhodes [Rhodes's mother] is the

victim in this matter and being an elderly woman in frail health and living in Pennsylvania specifically makes her more vulnerable than most.")).

At the end of the Hearing, the Panel further recommended that Blanchard: (1) "agrees to attend and complete an additional 15 hours of CLE credits in ethics as a condition precedent to applying for reinstatement;" (2) retakes the Multistate Professional Responsibility Exam; (3) immediately executes a quitclaim deed for the property on behalf of the Rhodes Family Trust and comply with Rhodes's mother to return the residence to the trust; (4) complies with Judge Kishner's order in paying fees and costs incurred from the case he was improperly participating on; and (5) agrees to continue treatment for depression during the time of his suspension and will not resume practice until he is mentally capable pursuant to the Nevada Lawyer Assistance Program. (*Id.* 82:1–83:3).

The Nevada Supreme Court reviewed the Panel's decision and suspended Blanchard for three years on December 23, 2015. (Order of Suspension, Ex. 1 to OSC, at 7). On April 6, 2016, the Court issued an Order to Show Cause for reciprocal discipline, (ECF No. 1), and on May 23, 2016, Blanchard filed a Response.

## II.    LEGAL STANDARD

A federal court imposes reciprocal discipline on a member of its bar when it determines that the state's disciplinary adjudication was proper. *In re Kramer*, 282 F.3d 721, 724 (9th Cir. 2002). However, the Court will not apply reciprocal discipline if, based on an independent review of the record, the previous adjudication reveals: (1) a deprivation of due process; (2) insufficient proof of misconduct; or (3) a grave injustice that would result from the imposition of such discipline. *Id.* (citing *Selling v. Radford*, 243 U.S. 46, 50–51 (1917)). The respondent-attorney bears the burden in demonstrating, by clear and convincing evidence, that the Court should preclude discipline due to one of these infringements. *Id.*; *see In re Calvo*, 88 F.3d 962, 967 (11th Cir. 1996).

Moreover, in reviewing reciprocal discipline, the Court does not "re-try an attorney for misconduct," but instead inquires "only whether the punishment imposed by another disciplinary authority or court was so ill-fitted to an attorney's adjudicated misconduct that reciprocal [discipline] would result in grave injustice." *Id.* at 727. Federal district courts review a state court's decision and disciplinary proceeding "if the state court's order is offered as the basis for suspending or disbarring an attorney from practice before a federal court." *In re Kramer*, 193 F.3d 1131, 1133 (9th Cir. 1999).

Consequently, Local Rule IA 11-7(e)(3) sets out this standard by requiring an attorney to provide facts showing one or more of the following by clear and convincing evidence:

A.  the procedure in the other jurisdiction was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process;
B.  there was such an infirmity of proof establishing the misconduct as to give rise to a clear conviction that the court should not accept as final the other jurisdiction's conclusion(s) on that subject;
C.  imposition of like discipline would result in a grave injustice; or
D.  other substantial reasons justify not accepting the other jurisdiction's conclusion(s).

L.R. IA 11-7(e)(3).  Accordingly, the attorney must prove that his state disciplinary adjudication suffered from at least one of these infringements in order to bar his reciprocal discipline in Federal Court.

## III.  <u>DISCUSSION</u>

Brent Blanchard alleges the State Bar of Nevada's disciplinary proceedings violated his Fourteenth Amendment due process rights and that the Court should "rightly exercise its inherent powers and ignore the 'findings' of the prior proceedings to impose significantly lesser, or even no, discipline with regard to federal practice." (Resp. 31:4–6).  Specifically, Blanchard asserts that his state discipline violates due process because it is "based on the Nevada Supreme Court's review of a bare written record," and that the Rhodes were never his clients to whom he owed duties pursuant to the Rules of Professional Conduct, (*see id.* 34:2–3, 31:7–8).  The allegations are addressed in turn.

***Due Process***

When a federal district court considers an attorney's reciprocal discipline, "an attorney subject to discipline is entitled to procedural due process, including notice and an opportunity to be heard." *Standing Comm. on Disc. of U.S. Dist. Ct. for S. Dist. of California v. Ross*, 735 F.2d 1168, 1170 (9th Cir. 1984).  Further, "in the federal system there is no uniform procedure for disciplinary proceedings. The individual judicial districts are free to define the rules to be followed and the grounds for punishment." *Id.*  In the District of Nevada, Local Rule IA 11-7(e)(3) provides that a court deprives an attorney of due process if "the procedure in the other jurisdiction was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process." L.R. IA 11-7(e)(3).

Here, Blanchard alleges that the Hearing lacked due process because the factual findings of that proceeding were "forced upon him as he was struggling to recover from depression which impaired his ability to respond appropriately beforehand." (Resp. 33:21–24). Additionally, he blames his secondary suspension solely on the CLE deficiency, and asserts that "when Blanchard was called on [the CLE issue] he stopped representing clients in Nevada." (*Id.* 34:10–12).  He continues, "Blanchard has tried with great effort to make things right with [Rhodes's mother], but even these proceedings continue his problem of having not enough hours in the day to quickly correct the CLE shortfall." (*Id.* 34:18–20).  Therefore, Blanchard asserts that due to his "CLE shortfall," he should only suffer a one-year suspension "retroactively or commencing with a later date of [the Court's] choosing." (*Id.* 34:21–24).

Blanchard fails, however, to assert how the proceeding lacked due process.  He seemingly advocates that the facts were blown out of proportion as his punishments should all come back to his CLE neglect.  Moreover, Blanchard had a formal hearing in front of the Panel; he participated in the Hearing, his representation asked for a mitigated suspension of a year, and the panel applied a three-year suspension. (*See generally* R. on Appeal, Vol. II).  Although

Blanchard is frustrated with this heightened punishment, he does not allege facts showing that the Hearing's procedure was so lacking in notice or the opportunity to be heard as to constitute a deprivation of due process.

Moreover, Blanchard overlooks that the Panel is not bound to his punishment in the CPG, but can modify that punishment to one they deem appropriate. *See* Nev. Sup. Ct. R. 113.[3] The Nevada Supreme Court has final say as to the punishment rendered and may adopt the plea agreement, may adopt the State Bar's recommendation from a hearing, or may remand the case if the court determines the punishment to be insufficient. *See In re Discipline of Read*, 2015 WL 5927068, at *1 (Nev. Oct. 9, 2015) ("Based on our review of the record, we agree that a suspension is warranted but conclude that the length of the suspension is insufficient in relation to Reade's admitted conduct. Accordingly, we reject the conditional guilty plea agreement and remand this matter to the Southern Nevada Disciplinary Board for further proceedings."). Accordingly, although the Panel rendered a heightened suspension contrary to Blanchard's CPG, the suspension does not violate Blanchard's due process rights.

### *Attorney-Client Relationship*

For the first time, Blanchard contests his relationship with Rhodes as not being an attorney-client relationship. (*See* Resp. 31:7–8).  In Nevada, an attorney-client relationship exists "'when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance.'" *Todd v. State*, 931 P.2d 721, 725 (Nev. 1997) (quoting *DeVaux v. American Home Assur. Co.*, 444 N.E. 2d 355, 357 (Mass. 1983)); *see Pack v. Ryan*, 238 P.3d 844 (Nev. 2008).

---

[3] "An attorney against whom a grievance or complaint has been made may tender a conditional guilty plea to the charge(s) in exchange for a stated form of discipline. The tendered plea shall be filed with bar counsel's office and approved, modified or rejected by a hearing panel. The tendered plea is subject to final approval or rejection by the supreme court if the stated form of discipline includes disbarment or suspension."

Additionally, "[a]n attorney-client relationship does not require that the parties execute a formal agreement, and the inquiry is highly fact-specific." *Pack*, 238 P.3d at 844.

Here, Blanchard admits that Rhodes had been his client. (Resp. 32:5–6) (implying that Rhodes was his client because he allegedly "stopped being Blanchard's client after refusing one loan modification"). Further, pursuant to the *Todd* test, Rhodes and Blanchard had an attorney-client relationship. Rhodes sought advice from Blanchard regarding what he should do about the foreclosed-on house, and they came up with the SAM LLC solution. (*Id.* ¶ 70). The advice and solution fell within the purview of matters in Blanchard's professional competence, as they dealt with trusts and real estate law, and Blanchard advised Rhodes regarding such. Finally, Blanchard acted upon their discussions and executed what had been agreed upon. (*Id.* ¶ 74). Accordingly, Rhodes and Blanchard had an attorney-client relationship and the Nevada Rules of Professional Conduct apply.

Moreover, Blanchard does not sufficiently allege that the imposition of discipline would constitute a deprivation of due process, insufficient proof of misconduct, or a grave injustice. Blanchard seemingly believes the imposed discipline is all three, but has not asserted any with clear and convincing evidence. He was suspended in 2010 for failing to meet his CLE deadlines, (CPG 2:7–8), and was never reinstated. He continued to advise Rhodes as an attorney, (Resp. ¶¶ 70–74), and acted as an attorney in 2014 before Judge Kishner, (CPG 5:4–9).

The Court is certainly sympathetic to Blanchard's events and illness. But this sympathy must be tempered by several concerns. First, Blanchard has been suspended from the Nevada bar since 2010—a fact that he does not deny—and Blanchard still continues to practice in Nevada. Second, as is evident from the facts, Blanchard's behavior since his prior suspension demonstrates serious gaps in knowledge and lapses of judgment that cannot be merely

overlooked by this Court or fully mitigated due to depression.  Accordingly, reciprocal discipline remains appropriate.

**IV.     CONCLUSION**

     **IT IS HEREBY ORDERED** that Brent A. Blanchard, Nevada State Bar #7605, is immediately **SUSPENDED** from federal practice in the United States District Court for the District of Nevada and may not reapply to practice in federal court until after he is readmitted to the Nevada State Bar and remains in good standing.  Any subsequent federal practice application must clearly reference this Order of reciprocal suspension.

     **DATED** this ___15___ day of December, 2016.


_____
Gloria M. Navarro, Chief Judge
United States District Judge